RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CITY OF CLEVELAND,

     *Plaintiff-Appellant,*

  *v.*

AMERIQUEST MORTGAGE SECURITIES, INC.;
BEAR STEARNS & CO., INC.; CITIGROUP
GLOBAL MARKETS, INC.; COUNTRYWIDE
SECURITIES CORPORATION; CREDIT SUISSE
FIRST BOSTON LLC; CREDIT SUISSE (USA),
INC.; GOLDMAN SACHS & CO.; DEUTSCHE BANK
SECURITIES, INC.; GREENWICH CAPITAL
MARKETS, INC.; GMAC-RFC; HSBC
SECURITIES (USA), INC.; JP MORGAN
ACQUISITION CORP.; MERRILL LYNCH, PIERCE,
FENNER & SMITH, INCORPORATED; MORGAN
STANLEY & CO., INC.; NOVASTAR MORTGAGE,
INC.; OPTION ONE MORTGAGE CORPORATION;
WASHINGTON MUTUAL BANK; WELLS FARGO
BANK, N.A.; WELLS FARGO ASSET SECURITIES
CORPORATION; CITIBANK, N.A.; CHASE BANK
USA, N.A.; BANK OF AMERICA, N.A.,

     *Defendants-Appellees.*

No. 09-3608

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 08-00139—Sara E. Lioi, District Judge.

Argued: April 27, 2010

Decided and Filed: July 27, 2010

Before: SUHRHEINRICH, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Joshua R. Cohen, COHEN ROSENTHAL & KRAMER LLP, Cleveland, Ohio,
for Appellant. David F. Adler, JONES DAY, Cleveland, Ohio, for Appellees. **ON BRIEF:**
Joshua R. Cohen, Jason R. Bristol, COHEN ROSENTHAL & KRAMER LLP, Cleveland,
Ohio, Robert J. Triozzi, Gary S. Singletary, Michael F. Cosgrove, CITY OF CLEVELAND
LAW DEPARTMENT, Cleveland, Ohio, for Appellant. David F. Adler, Andrew G.
Fiorella, JONES DAY, Cleveland, Ohio, Louis A. Chaiten, Eric E. Murphy, JONES DAY,

Columbus, Ohio, Robert D. Kehoe, Joseph J. Jerse, KEHOE & ASSOCIATES, Cleveland, Ohio, Joanne N. Davies, BUCHALTER NEMER, Irvine, California, Bernard LeSage, Shannon Keast, BUCHALTER NEMER, Los Angeles, California, Michael N. Ungar, Isaac Schulz, Richik Sarkar, ULMER & BERNE, Cleveland, Ohio, Brian D. Boyle, Christopher D. Catalano, O'MELVENY & MYERS LLP, Washington, D.C., William H. Falin, MOSCARINO & TREU, Cleveland, Ohio, Charles E. Davidow, PAUL WEISS RIFKIND WHARTON & GARRISON, Washington, D.C., Gabrielle E. Tenzer, PAUL WEISS RIFKIND WHARTON & GARRISON, New York, New York, William W. Jacobs, Kip Thomas Bollin, Robin M. Wilson, THOMPSON HINE, Cleveland, Ohio, Jeffrey Q. Smith, Scott E. Eckas, BINGHAM McCUTCHEN LLP, New York, New York, Richard H. Klapper, Michael T. Tomaino, Jr., SULLIVAN & CROMWELL LLP, New York, New York, W. Stuart Dornette, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, Stephen M. O'Bryan, TAFT STETTINIUS & HOLLISTER LLP, Cleveland, Ohio, Thomas Robert Lucchesi, BAKER & HOSTETLER LLP, Cleveland, Ohio, Benjamin Klubes, BUCKLEY SANDLER LLP, Washington, D.C., David H. Kistenbroker, Theresa L. Davis, KATTEN MUCHIN ROSENMAN LLP, Chicago, Illinois, Robert B. Casarona, ROETZEL & ANDRESS, LPA, Cleveland, Ohio, Robert N. Rapp, CALFEE, HALTER & GRISWOLD LLP, Cleveland, Ohio, Jay B. Kasner, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, New York, New York,  Joseph L. Barloon, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, Washington, D.C.,  John F. Marsh, HAHN LOESER & PARKS, Columbus, Ohio, Brian Brooks, O'MELVENY & MEYERS, Washington, D.C., Elizabeth McKeen, O'MELVENY & MEYERS, Newport Beach, California, Joseph T. Dattilo, BROUSE McDOWELL, Cleveland, Ohio, Patrick M. McLaughlin, McLAUGHLIN & McCAFFREY, LLP, Cleveland, Ohio, Robert D. Wick, Keith A. Noreika, COVINGTON & BURLING LLP, Washington, D.C., for Appellees.  Linda I. Cook, OHIO POVERTY LAW CENTER, Columbus, Ohio, Eugene L. Hollins, Dale D. Cook, WILES, BOYLE, BURKHOLDER & BRINGARDNER CO., L.P.A., Columbus, Ohio, for Amici Curiae.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge.  In this diversity case, the city of Cleveland, Ohio ("Cleveland"), brings a public nuisance suit against twenty-two financial entities ("Defendants") that it claims are responsible for a large portion of the subprime lending market in Cleveland and nationally.[1]  Cleveland argues that the Defendants' financing of subprime mortgages, the alleged public nuisance, led to a foreclosure crisis in Cleveland that devastated its neighborhoods and economy.  On appeal, Cleveland initially contends

---

[1] In Ohio, a public nuisance is defined as "an unreasonable interference with a right common to the general public." *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (quoting Restatement (Second) of Torts § 821B(1)).

that the district court erred when it refused to remand this suit to Ohio state court.  It also appeals, on the merits, the district court's four independent reasons for dismissing this suit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: (1) preemption, (2) the economic loss rule, (3) unreasonable interference of a public right, and (4) proximate cause.  The district court considered each reason to be dispositive in favor of all Defendants.  For the reasons that follow, we **AFFIRM**.

## I.  Background

### A.  Factual Background

In its complaint, Cleveland acknowledges that, for the most part, the Defendants did not originate the subprime mortgages at issue in this appeal.  Nevertheless, it alleges that the Defendants' financing, purchasing, and pooling of vast amounts of these loans, to create mortgage-backed securities to sell to their customers, constituted a public nuisance.  Cleveland puts forward the following factual pattern to support its claim:

> (1) Wall Street made cash available to subprime lenders, which (2) used the funds to make subprime loans to consumers, then (3) sold the related mortgages back to the same cadre of Wall Street, which (4) packaged them and sold the income they generated to investors in the form of mortgage-backed securities, and (5) used the proceeds to repeat the process.

Cleveland maintains that, beginning in 2003, the Defendants became more brazen in their lending activities and began to direct lenders on the types of loans to issue to meet the Defendants' securitization needs.  These pressures "subverted the normal operation of the mortgage market and inevitably led to the abandonment of meaningful underwriting standards."  Because of growth in the real-estate market, the Defendants ignored these issues and turned a blind-eye even when loans made no economic sense.  The complaint concludes that these "securitizers" were principally responsible for the financial crisis.

Cleveland alleges that the factors that led to the housing bubble never materialized in Cleveland because of its high rate of poverty, sluggish job market,

struggling Rust-Belt economy, declining manufacturing sector, sparse housing demand, and difficulty fostering new industries. Cleveland's unique economic plight and its stagnant housing market made mass foreclosures the foreseeable and inevitable result of the subprime financing provided by the Defendants. The Defendants knew about these unique issues but nevertheless continued to finance subprime mortgages in Cleveland. These activities led to thousands of foreclosed homes in neighborhoods throughout Cleveland that became "eyesores, fire hazards, and easy prey for looters and drug dealers in search of a place to conduct their business."

Cleveland claims that each foreclosure creates tangible costs for the city, including increased expenditures for fire and police protection and maintenance and demolition costs. Tax revenues also plummeted because of the decline in housing values due to the foreclosed homes. Cleveland seeks to recover millions in municipal expenditures and diminished tax revenues as damages.

## B. Procedural Background

Cleveland filed suit on January 10, 2008, in the Court of Common Pleas for Cuyahoga County, Ohio. It brought a single claim of public nuisance against twenty-one defendants—some of which are current Defendants. Asserting diversity of citizenship, Lehman Brothers Holdings, Inc. ("Lehman Brothers"),[2] removed the suit to the Northern District of Ohio on January 16, 2008. Cleveland moved the next day to remand the case to state court. It argued that Lehman Brothers's removal was improper because Lehman Brothers was required to either obtain the unanimous consent of all of the defendants before removing the case or explain in its Notice of Removal why it did not pursue this course of action. All of the defendants joined a motion opposing the motion to remand shortly thereafter. After supplemental briefing and oral argument, the district court denied Cleveland's motion to remand on August 8, 2008. *City of Cleveland v. Deutsche Bank Trust Co.*, 571 F. Supp. 2d 807 (N.D. Ohio 2008).

---

[2]Lehman Brothers is no longer a Defendant.

Subsequently, Cleveland filed a new public nuisance claim in state court. It made allegations similar to those found in the original complaint but brought the suit against some new defendants and some affiliates of the original defendants. For example, Countrywide Financial Corp. was a defendant in the original suit, but Cleveland sued Countrywide Home Loans, Inc. and Countrywide Securities Corp. in its new state court suit. A Joint Motion for Entry of Agreed Order Regarding Plaintiff's Motion for Leave to Amend ("Joint Motion") was then agreed to,[3] which the district court approved. The Joint Motion was intended "to resolve the disagreement that has arisen between the parties and to avoid protracted litigation . . . ." *City of Cleveland v. Deutsche Bank Trust Co.*, No. 1:08-CV-00139 (N.D. Ohio September 29, 2008) (order approving Joint Motion). Among other things, it limited which defendants Cleveland could sue. Afterwards, Cleveland filed its Second Amended complaint in federal court—the complaint at issue in this appeal—against the current Defendants.

Defendants filed eight separate motions to dismiss—some individually and some collectively. The district court dismissed the complaint pursuant to Rule 12(b)(6) on May 15, 2009, for four independent reasons. *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 621 F. Supp. 2d 513 (N.D. Ohio 2009). First, the court held that Ohio Rev. Code § 1.63, an Ohio state law that forbids municipalities from engaging in mortgage regulation, preempted Cleveland's public nuisance claim. *Id.* at 520. Second, the court held that Ohio's economic loss rule barred Cleveland's claim. *Id.* at 526. Third, the court held that subprime lending cannot form the basis of a public nuisance claim because it is legal, and that, by extension, funding subprime lending also cannot be a public nuisance. *Id.* at 531. Fourth, the court held that the assertions in Cleveland's complaint were insufficient to satisfy the directness requirement of proximate cause because its allegations did not "demonstrate any direct relationship between its alleged injury and [the] Defendants' conduct." *Id.* at 533. The court declined to rule on the

---

[3]Cleveland entered into a separate agreement with Wells Fargo Bank, N.A. and Wells Fargo Asset Securities Corporation, where it also agreed to pursue all claims "in federal court in the federal nuisance action." GMAC-RFC was not a party to the Joint Motion.

other four motions because it found its rulings on the four issues it considered to be dispositive for all of the Defendants. *Id.* at 516. Cleveland appeals.

## II. Analysis

### A. Motion to Remand

Cleveland argues that the district court should have remanded this case to Ohio court because the Defendants' removal was defective. However, Cleveland waived its right to pursue this issue on appeal because the Joint Motion contained a clause that stated: "Plaintiff shall prosecute the public nuisance claim against the Eliminated Defendants and the Amended Defendants, if at all, exclusively in this Court and as part of this case . . . ."[4] It is well-established that the waiver of a party's right to removal must be clear and unequivocal. *See, e.g., Cadle Co. v. Reiner, Reiner & Bendett, P.C.*, 307 F. App'x 884, 886 (6th Cir. 2009). Further, "[g]eneral principles of contract interpretation apply when determining whether a clause explicitly waives the right of removal." *Id.* (citing *In re Delta Am. Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990)).

Here, there is no plausible way to read this language as anything other than a clear and unequivocal waiver of Cleveland's right to further pursue its motion to remand on appeal, and Cleveland neither contests the validity of the Joint Motion nor suggests an alternative reading of this clause.[5] Instead, Cleveland contends that, despite the express language in the Joint Motion, it did not waive its right to appeal this ruling because it made a tactical decision based on time and money to enter into the agreement. These reasons are inadequate to void the agreement under the general principles of contract law. Therefore, the Joint Motion precludes Cleveland from now arguing that

---

[4]All of the current Defendants were parties in the Joint Motion and were listed as either Amended Defendants or Eliminated Defendants, except for GMAC-RFC. GMAC-RFC was not a party to the Joint Motion, and was neither an Amended Defendant nor an Eliminated Defendant.

[5]Cleveland could have contested the effect of the Joint Motion on its claim against GMAC-RFC. However, Cleveland has not made this argument in its briefs or at oral argument, so it is waived. *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 544 n.8 (6th Cir. 2002) ("It is well established that an issue not raised in a party's briefs on appeal may be deemed waived.").

the district court should have remanded this suit, and the district court properly permitted this case to proceed in federal court.

Furthermore, even if we ignore the Joint Motion, the district court still properly declined to remand this case. We review a district court's refusal to remand de novo. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 200 (6th Cir. 2004). Cleveland argues that the district court's ruling did not conform with the rule of unanimity. The "rule of unanimity demands that all defendants must join in a petition to remove a state case to federal court." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). This circuit has identified at least three ways to satisfy this rule: all parties that have been served or otherwise properly joined may (1) join in the removal, (2) file a written consent to removal, or (3) oppose a motion to remand. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999) (the first two options); *Harper*, 392 F.3d at 202 (the third option). The Defendants met two of these conditions. First, after Lehman Brothers filed its notice of removal on January 16, 2008, each Defendant filed a consent to removal, the last of which was filed February 1, 2008, within the thirty day period. Second, after Cleveland filed its motion to remand on January 17, 2008, all of the Defendants opposed Cleveland's motion to remand on February 1, 2008, also within the thirty day period.

We note that Cleveland has waived its argument that the rule of unanimity was violated because Bear Stearns's consent to removal was invalid. At oral argument, Cleveland conceded that it had purposefully waited to raise this argument until oral argument for its motion to remand, while believing that its general motion for remand would allow it to challenge Bear Stearns's consent after thirty days. Cleveland employed this suspect approach despite indicating in its Reply Brief in Support of Motion for Remand, filed on February 8, 2008, that "[a]ll of the defendants did eventually give their consent to removal." Because the argument raised by Cleveland at oral argument is inconsistent with the arguments it made during the thirty day period, it has waived its objection to Bear Stearns's consent. *See Mellon v. Int'l Shoe Co.*, 32 F.2d 390, 391 (D. Mass. 1929) ("This action was entirely inconsistent with the position

taken in the motion to remand, and, having been done without any reservation of rights under the motion, had the effect of waiving the motion."). In any case, Bear Stearns also joined the opposition to remand, as did all of the Defendants, and this action alone was sufficient to satisfy the rule of unanimity.

Thus, we now turn to the district court's dismissal of this suit pursuant to Rule 12(b)(6). For the sake of judicial efficiency, we begin, and end, our analysis with the district court's proximate cause ruling.

### B. Standard of Review

We review de novo the district court's dismissal pursuant to Rule 12(b)(6). *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). We construe the complaint in a light most favorable to the nonmoving party and accept all plausible well-pled factual allegations as true. *Bell Atl. Corp. v.* Twombly, 550 U.S. 544, 556 (2007), and *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.* at 336-37 (citing *Mezibov*, 411 F.3d at 716).

### C. Applicable Law

Because this suit is before us pursuant to our diversity jurisdiction, we apply the substantive law of Ohio and federal procedural law. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). When applying the substantive law of Ohio, we must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (quoting *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000)). "If the issue has not been directly addressed, we must 'anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *Id.* (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)).

### D. Proximate Cause

Cleveland argues that its complaint alleged facts sufficient to satisfy the directness requirement. The directness requirement "requires some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Although not the sole element, the requirement of a direct injury is a "central element" of proximate cause. *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003). Notably, this requirement is distinct from foreseeability and applies even if the Defendants intentionally caused the alleged course of events. *Id.* at 850. Accordingly, although Cleveland asserts that the Defendants knew about the consequences of subprime lending, this allegation is not relevant to our directness requirement analysis.

*Holmes* is the seminal United States Supreme Court decision that discusses the directness requirement, and the Ohio Supreme Court has adopted the *Holmes* Court's proximate cause analysis. *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1148-49 (Ohio 2002). *Holmes* is therefore the focus of our directness requirement analysis. In *Holmes*, the plaintiff, Securities Investor Protection Corporation ("SIPC"), brought suit against several defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Holmes*, 503 U.S. at 262. SIPC alleged that these defendants conspired to fraudulently manipulate stocks, which led to the insolvency of two securities broker-dealers. *Id.* at 261. As a result, the broker-dealers failed to satisfy their financial obligations to their customers, and SIPC, a provider of insurance to bankrupt broker-dealers that could no longer pay their customers, was forced to cover the broker-dealers' debts. *Id.* at 262-63. SIPC sued for reimbursement, but the Court declined to find liability because "the link [was] too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers." *Id.* at 271.

In *Beretta*, the Ohio Supreme Court summarized the three reasons given in *Holmes* for a directness requirement:

> (1) indirectness adds to the difficulty in determining which of the plaintiff's damages can be attributed to the defendant's misconduct, (2) recognizing the claims of the indirectly injured would complicate the apportionment of damages among plaintiffs to avoid multiple recoveries, and (3) these complications are unwarranted given the availability of other parties who are directly injured and who can remedy the harm without these associated problems.

*Beretta*, 768 N.E.2d at 1148 (citing *Holmes*, 503 U.S. at 269-70).  The United States Supreme Court has since noted that these factors in *Holmes* are relevant to determine whether a plaintiff has sufficiently pleaded proximate cause, but all three factors do not need to be present for remoteness to bar recovery.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006) (noting that the second factor was not implicated yet still holding that the plaintiff had failed to sufficiently allege proximate cause).

As an initial matter, Cleveland contends that the district court's proximate cause analysis at the motion to dismiss stage was premature.  As support, it cites this court's decision in *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004).  In that case, former employees of a poultry plant sued under RICO, and alleged that the defendant, the poultry plant owner, schemed with employment agencies to depress wages by hiring illegal immigrants.  *Id.*  We refrained from engaging in a proximate cause analysis at the pleadings stage because we perceived that the analysis would be too speculative.  *Id.* at 619.  However, contrary to Cleveland's suggestions otherwise, there is no per se rule against dismissing a complaint for failure to adequately plead proximate cause.  In fact, subsequent to *Trollinger*, the Supreme Court dismissed the complaint in *Anza* at the motion to dismiss stage for failure to plead proximate cause.  *See Anza*, 547 U.S. at 453.  Cleveland still has an obligation to file a complaint that is "plausible on its face."  *Bell*, 550 U.S. at 556.  Accordingly, we, just as the Supreme Court in *Anza*, proceed to the question of whether the complaint sufficiently pleaded proximate cause and, specifically, whether the allegations in the complaint satisfy the directness requirement.

For the purposes of answering this question, the Supreme Court's application of *Holmes* in its subsequent decision *Anza* is instructive and consistent with how we believe

the Ohio Supreme Court would consider this matter because the Ohio Supreme Court has previously adopted the directness requirement precedent of the United States Supreme Court. *See Savedoff*, 524 F.3d at 762 (when a state's highest court has not addressed an issue, we anticipate how that court would rule). In *Anza*, the United States Supreme Court considered the private RICO claim of the plaintiff, Ideal, which alleged that the defendant, National, engaged in mail and wire fraud that led to lost sales at the plaintiff's business. *Anza*, 547 U.S. at 453. Specifically, the plaintiff alleged that the defendant defrauded the New York tax authority and used the proceeds from this fraud to offer lower prices to its customers, which led to the plaintiff's lower sales because Ideal and National were competitors. *Id.* at 457-58. The Court held that the complaint did not satisfy the directness requirement because the alleged violation did not lead directly to the plaintiff's injuries. *Id.* at 461. It reasoned: "The cause of Ideal's asserted harms . . . is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 458.

Similarly, here, the cause of the alleged harms is a set of actions (neglect of property, starting fires, looting, and dealing drugs) that is completely distinct from the asserted misconduct (financing subprime loans). *See id*.; *see also Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 982 (9th Cir. 2008) ("Here, just as in *Anza*, the cause of the plaintiff's asserted harms is a set of actions (increased demand by people within Canyon County for public health care and law enforcement services) entirely distinct from the alleged RICO violation (the defendants' knowing hiring of undocumented workers)."). This lack of directness exposes "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." *Id.* (citing *Holmes*, 503 U.S. at 269 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors.")).

Just as in *Anza*, "[t]his conclusion is confirmed by considering the directness requirement's underlying premises." *Id.* Of the three *Holmes* factors, the first and third factors are squarely implicated by the facts alleged in the complaint. We begin with an

analysis of the first factor*,* which states that indirectness adds to the difficulty of determining which damages can be attributed to the defendant's misconduct. *See Beretta*, 768 N.E.2d at 1148 (summarizing the first *Holmes* factor). Again, *Anza* provides a useful comparison. In *Anza*, the Court noted that "[t]he injury Ideal alleges is its own loss of sales resulting from National's decreased prices for cash-paying customers. National, however, could have lowered its prices *for any number of reasons unconnected to the asserted pattern of fraud.*" *Anza*, 547 U.S. at 458-59 (emphasis added).

Likewise, in this case, the injuries that Cleveland alleges could have been caused by many other factors unconnected to the Defendants' conduct. Companies that sold mortgages to home buyers decided which loans should be made and on what conditions. Although the complaint alleges that the Defendants sometimes dictated which types of loans to make, these companies ultimately made the decisions regarding where they would seek financing, which types of loans they would market and sell, and, once the mortgagee, whether to keep the mortgage or sell it to another buyer, such as one of the Defendants. Moreover, home buyers chose to enter into a subprime mortgage and to default on their loans. And, once the mortgagor defaulted, the mortgagee or his assigns chose to begin the foreclosure process. These voluntary choices were made for a variety of reasons unrelated to the Defendants.

The alleged damages that subsequently occurred—eyesores, fires, drug deals, and looting—were also not directly caused by the Defendants. Homeowners, whether the initial buyers or mortgagees that later took possession of a home, were responsible for maintaining their properties. Fires were likely started by negligent or malicious individuals or occurred because a home was poorly built. Drug dealers and looters made independent decisions to engage in that criminal conduct. Additionally, other companies not listed in the complaint financed subprime loans and properties not subject to a subprime loan nevertheless entered into foreclosure. Similar to *Holmes* and *Anza*, Cleveland has not stated a viable claim when these actions could have occurred for "any number of reasons unconnected to the asserted pattern of [misconduct]." *Id.* at 458.

The involvement of so many independent actors also reveals why Cleveland's reliance on *Beretta* is misplaced. In that case*,* the Ohio Supreme Court allowed a lawsuit against handgun manufacturers, brought under numerous theories of liability including public nuisance, to proceed past the motion to dismiss stage. *Beretta*, 768 N.E.2d at 1140. But, in *Beretta*, the plaintiffs accused the defendants of creating and supplying an illegal firearms market in Cincinnati through their marketing, distribution, and selling of firearms. *Id.* at 1143. By contrast, the complaint concedes that, for the most part, the Defendants did not directly make subprime loans to the homeowners of Cleveland. The Defendants are instead accused of financing a legal market for these loans. Thus, for *Beretta* to be analogous to the instant case, the Ohio Supreme Court would have had to allow a suit against the banks that provided financing to the gun manufacturers that allegedly created the illegal secondary market. Because there is another set of independent actors between the alleged misconduct and the alleged injury, the proximate cause holding in that case does not logically extend to this one.[6]

Another similar reason that the complaint does not satisfy the directness requirement, which also touches on the concerns implicated by the first *Holmes* factor, is that the remote connection between the alleged misconduct and the alleged injury makes it impossible "to ascertain the amount of [Cleveland's] damages attributable to the violation." *See Holmes*, 503 U.S. at 269. The Court's reasoning in *Anza* is once more instructive:

> There is, in addition, a second discontinuity between the RICO violation and the asserted injury. Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices. . . . The attenuated connection between Ideal's injury and the Anzas' injurious conduct thus implicates fundamental concerns expressed in *Holmes*.

---

[6]Although not relevant to the directness requirement, there is at least one other critical difference between this case and *Beretta.* The complaint in *Beretta* accused the defendants of financing an *illegal* market for guns, whereas, here, the Defendants allegedly financed a *legal* subprime mortgage market.

*Anza*, 547 U.S. at 459 (internal citations omitted).

Just as in *Anza*, this case "implicates fundamental concerns expressed in *Holmes.*" *Id.* A "complex assessment" would be needed to determine which municipal expenditures increased and tax revenues decreased because of the ills caused by foreclosed homes rather than, *inter alia*, job losses due to the decline in manufacturing, fickle consumer tastes, deteriorating schools, a national recession, or increases in crime not related to foreclosures. *Id.* Cleveland points to many of these factors in its brief to demonstrate why the Defendants should have known to avoid financing subprime loans in Cleveland, but these same reasons make it impossible for Cleveland to plead proximate cause under Ohio law. *See id.* ("Further illustrating this point is the speculative nature of the proceedings that would follow if Ideal were permitted to maintain its claim."); *see also Canyon County*, 519 F.3d at 983 ("The causal chain would also be difficult to ascertain because there are numerous alternative causes that might be the actual source or sources of the County's alleged harm.").

Finally, Cleveland's claim fails because, in accordance with *Holmes's* third factor, more immediate victims can sue to the extent that the Defendants violated any laws. *See Anza*, 547 U.S. at 460 ("The requirement of a direct causal connection is especially warranted where the immediate victims . . . can be expected to vindicate the laws by pursuing their own claims."). The Supreme Court explained in *Anza* that when the adjudication of another party's claim would be "relatively straightforward" and "considerably easier," "[t]here is no need to broaden the universe of actionable harms to permit . . . suits by parties who have been injured only indirectly." *Id.* Here, a suit brought by a mortgagor whose home has been foreclosed on would be "relatively straighforward" and damages would be "considerably easier" to calculate because the mortgagor could limit his suit to the the specific Defendants that financed his subprime loan or loans. Additionally, other home owners who were injured because their neighborhood declined due to foreclosed homes, while not necessarily immediate victims, are closer in the alleged chain of causation than Cleveland. It would be easier to calculate the damages suffered by property owners in a specific neighborhood, where

the court could more readily ascertain how many foreclosures occurred and what caused them, than to calculate the damages to the whole city of Cleveland. And, to the extent that misconduct occurred when the Defendants sold mortgages to create mortgage-backed securities, the buyers of these securities can bring their own causes of action. These other potential claims obviate the need for this court to allow Cleveland's claim to proceed.

In sum, even when viewing the assertions in the complaint in a light most favorable to Cleveland, the connection between the alleged harm and the alleged misconduct is too indirect to warrant recovery. Although the facts are different than those before the Supreme Court in *Holmes* and *Anza,* the same directness concerns are implicated.

## III. Conclusion

Our proximate cause holding clearly resolves this case, and we therefore do not need to address the district court's remaining reasons for dismissing the complaint. Accordingly, we **AFFIRM**.