RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARK ALBRECHT; DIANE ALBRECHT, Both
individually and on behalf of others similarly
situated,
                    _Plaintiffs-Appellants_,

                    _v._

BRIAN TREON, M.D., Individually and in his
official capacity as Coroner of Clermont
County, Ohio, and on behalf of others
similarly situated; BOARD OF COUNTY
COMMISSIONERS OF CLERMONT COUNTY,
OHIO, for itself and on behalf of others
similarly situated; MARY WALKER, in her
capacity as commissioner of Clermont
County, Ohio, and on behalf of others
similarly situated; BOB PROUD, in his
capacity as commissioner of Clermont
County, Ohio, and on behalf of others
similarly situated; SCOTT CROSWELL, in his
capacity as commissioner of Clermont
County, Ohio, and on behalf of others
similarly situated,
                    _Defendants-Appellees_.

No. 09-3703

>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 06-00274—Susan J. Dlott, Chief District Judge.

Argued: August 6, 2010

Decided and Filed: August 24, 2010

Before: GUY and GRIFFIN, Circuit Judges; HOOD, Senior District Judge.[*]

_____

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of
Kentucky, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** John Henry Metz, LAW OFFICE, Cincinnati, Ohio, for Appellants. H. Elizabeth Mason, CLERMONT COUNTY PROSECUTOR'S OFFICE, Batavia, Ohio, for Appellees. **ON BRIEF:** John Henry Metz, LAW OFFICE, Cincinnati, Ohio, Patrick J. Perotti, DWORKEN BERNSTEIN CO., LPA, Painesville, Ohio, for Appellants. H. Elizabeth Mason, CLERMONT COUNTY PROSECUTOR'S OFFICE, Batavia, Ohio, for Appellees. Mark D. Landes, David G. Jennings, Jennifer H. George, ISAAC, BRANT, LEDMAN & TEETOR, Columbus, Ohio, David G. Lambert, Paul J. Cristallo, Frederick W. Whatley, CUYAHOGA COUNTY PROSECUTOR'S OFFICE, Cleveland, Ohio, for Amici Curiae.

---

**OPINION**

---

HOOD, Senior District Judge. Plaintiffs-Appellants Mark and Diane Albrecht, et al. ("the Albrechts") appeal the district court's decision to grant judgment on the pleadings in favor of Defendants-Appellees Brian Treon, et al. (hereinafter, "Defendants"). The Albrechts brought a claim pursuant to 42 U.S.C. § 1983, alleging that they were denied due process of law when the defendant coroner performed an autopsy on the Albrechts' son's remains and removed the brain during the procedure. When the body was returned to the Albrechts, they were not informed that the coroner had retained the brain for further study and that it would be destroyed once the investigation was complete. The Albrechts claim that the retention and destruction of their son's brain, without their knowledge, deprived them of the right to dispose of their son's brain, in violation of the Due Process Clause of the Fourteenth Amendment. The Albrechts base this claim on their purported property interest in their son's entire body, including his brain. The Albrechts also brought common law tort claims against Defendants, over which the district court exercised supplemental jurisdiction.

The district court was faced with the question of whether the Albrechts had a constitutionally protected property interest in their son's brain after it was removed and retained for legitimate investigative purposes. As this was a question of first impression

in Ohio, the district court certified the question to the Ohio Supreme Court. The Ohio Supreme Court answered the question in the negative, stating that there is no constitutionally protected property interest in human remains retained by the state of Ohio for criminal investigation purposes. The district court consequently held that the Albrechts had no property interest in the brain, and, thus, Defendants were entitled to judgment on the pleadings. The Albrechts argue that the Sixth Circuit's ruling in *Brotherton v. Cleveland, M.D.*, 923 F.2d 477 (6th Cir. 1991), holding that a spouse had a protected property interest in her husband's corneas, which were removed for donation purposes, should rule this case, as opposed to the Ohio Supreme Court's answer to the certified question.

For the reasons which follow, the judgment of the district court is **AFFIRMED**.

## I.     Factual and Procedural Background

The coroner for Clermont County, Ohio, performed an autopsy on the Albrechts' son's remains. The autopsy required examination of their son's brain. In order to examine and dissect a human brain more effectively, the jelly-like organ must be soaked in a formol saline solution for ten to fourteen days, a process referred to as "fixing" the brain, which firms the brain tissue for dissection. Due to the lengthy process of fixing the brain, it is the usual practice of the coroner to return the remains to next of kin for disposition without the brain. The coroner did not inform the Albrechts that he retained their son's brain upon return of the body to them. When the examination of the brain was completed, it was destroyed in accordance with the coroner's usual practice. The coroner did not notify the Albrechts that the brain was going to be destroyed. The Albrechts learned that their son's body was missing the brain when they received the autopsy report months later, long after burying their son. The Albrechts filed suit, claiming a violation of the Due Process Clause of the Fourteenth Amendment and common law tort liability. The suit was certified as a class action, and the Albrechts represent a class of similarly-situated plaintiffs whose deceased family members' bodies were returned to them missing tissues or organs that the coroner retained for further study in the course of a criminal investigation.

**II.     Standard of Review**

"Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).  Courts "must construe the complaint in the light most favorable to plaintiff," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" *id.*, and determine whether the "complaint states a plausible claim for relief[,]" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).  However, the plaintiff must provide the grounds for its entitlement to relief, *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001), and that "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct . . . ."  *Id.* at 1949, 1950.

**III.     Discussion**

**A.  Ohio Supreme Court's Ruling in *Albrecht II***

The Albrechts argue that under *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir. 1991), and *Whaley v. County of Tuscola*, 58 F.3d 1111 (6th Cir. 1995), they had a constitutionally protected property interest in their son's discarded brain.  In *Brotherton*, the plaintiff objected to the donation of her deceased husband's organs at the hospital. This objection, however, was not conveyed to the county coroner, who removed the decedent's corneas pursuant to an Ohio statute which "permitted a coroner to remove the corneas of autopsy subjects without consent, provided that the coroner has no knowledge of an objection by the decedent, the decedent's spouse, or . . . the person authorized to dispose of the body." *Brotherton v. Cleveland*, 923 F.2d at 478.  We reversed the district

court's dismissal of the plaintiff's § 1983 claims, finding that the plaintiff had the right to possession of her husband's body for the limited purpose of lawfully disposing of it. *Id.* At issue in *Brotherton,* however, was part of Ohio's adoption of the Uniform Anatomical Gift Act, which expressly granted next of kin the right to dispose of a relative's remains.[1] There is no similar statute at issue in this case.

*Whaley* is a direct progeny of *Brotherton* and arose under similar facts. The plaintiffs in *Whaley* were the next of kin of persons whose bodies were the subject of autopsies and whose corneas or eyeballs were removed, either without the consent of the next of kin, or after the objection of their next of kin. The *Whaley* court held that under Michigan law, "the next-of-kin [have] a legitimate claim of entitlement and thus a property interest in a dead relative's body, including the eyes." *Whaley v. County of Tuscola*, 58 F.3d 1111, 1117 (6th Cir. 1995). The Albrechts maintain that *Brotherton* and *Whaley* control the outcome in this case, arguing that their right to their son's brain is constitutionally equal to the plaintiffs' rights in *Brotherton* and *Whaley* to their relatives' eyeballs or corneas. Defendants claim that *Brotherton* and *Whaley* are distinguishable from the facts in this case, because removal and retention of tissue or organ for donation purposes, as in *Brotherton* and *Whaley*, serve little function for the state, and, thus, the relatives have greater property interest in the body parts. However, removal and retention of tissues or organs for forensic analysis in furtherance of a criminal investigation serves an important state function, which is paramount to the Albrechts' right to possess their son's body in its entirety.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest."

---

[1]That statute does not apply here, because this case relates to the rights of a coroner to possess, examine, and dispose of a corpse, not the right of the next of kin to object or consent to organ donation.

*Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (citation omitted).  Property interests "are defined by existing rules or understandings that stem from an independent source such as state law-rules . . . ."  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  "Although property rights are principally created by state law, whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law. . . . The due process clause only protects those interests to which one has a legitimate claim of entitlement."  *Waeschle v. Dragovic*, 576 F.3d 539, 544-45 (6th Cir. 2009).

The issue on appeal is whether the Albrechts had a constitutionally protected property interest in their son's brain after it was removed during the autopsy.  As noted above, Ohio state law governs the definition of "property" in Ohio.  *Board of Regents of State Colleges v. Roth*, 408 U.S. at 577.  Because this was an issue of first impression in Ohio, the district court certified the following question to the Ohio Supreme Court:

> a protected right under Ohio law in the decedent's tissues, organs, blood
> or other body parts that have been removed and retained by the coroner
> for forensic examination Whether the next of kin of a decedent, upon
> whom an autopsy has been performed, have and testing.

The Ohio Supreme Court accepted the certified question for review and held that "the next of kin of a decedent upon whom an autopsy has been performed do not have a protected right under Ohio law in the decedent's tissues, organs, blood, or other body parts that have been removed and retained by the coroner for forensic examination and testing."  *Albrecht v. Treon*, 889 N.E. 120, 122;118 Ohio St.3d 348, 350 (2008) (*Albrecht II*).[2]  As a result of that answer, the district court held that "[b]ecause Ohio law does not give the next of kin of a decedent upon whom an autopsy has been performed a protected right in the decedent's tissues, organs, blood or other body parts that have been removed and retained by the coroner for forensic examination and testing,

---

[2]In the relevant case law, the district court case from which this appeal is taken is referred to as "*Albrecht I*" and the Ohio Supreme Court's opinion answering the district court's certified question is referred to as "*Albrecht II*."

Plaintiff's action brought pursuant to 42 U.S.C. § 1983 fails as a matter of law." We agree.

This Court addressed the issue in this case on two previous occasions. Prior to the district court's ruling on the motion for judgment on the pleadings, the Albrechts sought a writ of mandamus directing the district court to withdraw the certification or a writ of prohibition directing the district court not to consider any answer that the Supreme Court might offer to the certified question. We denied the mandamus petition, stating that "the plaintiffs invoke a holding in a decision issued in another case on a distinguishable set of facts. Since *Brotherton* was decided, changes in Ohio law suggest another reading may be possible." *In re Albrecht*, No. 07-3419, slip op. at 3 (6th Cir. May 2, 2007).

In August 2009, we discussed the case at bar at length in *Waeschle v. Dragovic*, 576 F.3d 539 (6th Cir. 2009). The facts in *Waeschle* are nearly identical to the facts in this case, but *Waeschle* originated in Michigan, not Ohio. Noting the similarities between Michigan and Ohio property law, we stated, "the [Ohio Supreme] Court's decision in *Albrecht II*, which explicitly denied that the next of kin have a right to body parts collected for forensic examination, suggests that such a right would probably not be recognized under existing Michigan law." *Waeschle*, 576 F.3d at 548-9. We held that for the purposes of qualified immunity, "Waeschle's alleged constitutionally protected property right to her mother's brain is [not clearly established,]" but cautioned that it did not "determine the existence or the scope of Waeschle's right to her mother's brain in the present case." *Id.* at 550.

The Albrechts argue that there is a conflict between Ohio state law and the law of this circuit regarding a person's rights to a deceased relative's body parts. The Albrechts further argue that the Ohio Supreme Court decision in *Albrecht II*, holding that next of kin do not have a property interest in autopsy specimens gathered for the purpose of a legitimate investigation, cannot "overrule" the Sixth Circuit decision in *Brotherton*, holding that next of kin do have a protected property interest in the eyes of deceased relatives, removed for the purpose of donation.

The Albrecht's arguments are flawed.  First, the Albrechts confuse the definition of "protected" with the definition of "property."  As previously explained above, the states define "property," "property rights," and "property interest."  *Board of Regents of State Colleges v. Roth*, 408 U.S. at 577.  Whether that "property interest" is constitutionally "protected," however, is a matter of federal law.  *Waeschle v. Dragovic*, 576 F.3d at 544-45; *see Brotherton v. Cleveland*, 923 F.2d at 481-82 ("Although the existence of an interest may be a matter of state law, whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the due process clause is determined by federal law.").  Thus, there are two questions in determining whether a plaintiff has a constitutionally protected property interest sufficient to support a § 1983 claim: first, is there a property interest, stemming from "an independent source such as state-law rules" and second, whether that interest, if any, "rises to the level of a constitutionally protected property interest." *Board of Regents of State Colleges v. Roth*, 408 U.S. at 577 and *Waeschle v. Dragovic*, 576 F.3d at 544-45.  Obviously, if the first question is answered in the negative, the second question is moot.  In its holding in *Albrecht II*, the Ohio Supreme Court found that there is no property right to autopsy specimens removed and retained for purposes of a lawful criminal investigation.[3]

The Ohio Supreme Court's decision in *Albrecht II* did not "overrule" Sixth Circuit precedent.  *Albrecht II* is a clarification of property law in the state of Ohio. "Principles of comity require federal courts to defer to a state's judgment on issues of state law . . . ." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001).  The district court

---

[3]Although the *Albrecht II* court stated that "the next of kin of a decedent upon whom an autopsy has been performed do not have a *protected right* under Ohio law in the decedent's tissues, organs, blood, or other body parts that have been removed and retained by the coroner for forensic examination and testing," the Court merely answered the question using the language the district court used in the question it submitted. *Albrecht II*, 118 Ohio St.3d at 350 (emphasis added).  The full language of the opinion makes it clear that the Ohio Supreme Court was determining whether the "state law in effect at the time of the incident gave them a property interest in their deceased son's body parts." *Id.* at 351 (emphasis added)(citation omitted).  Furthermore, this Court has already identified and dismissed the district court's misstatement in its denial of the Albrecht's petition for mandamus, stating,

> The plaintiffs also suggest that the district court erred by asking the Ohio Supreme Court whether there is a "protected" interest, rather than a "property" interest. Although the two terms generate some confusion, we are convinced that the district court recognized that there is a state component and a federal component to the plaintiffs' cause of action.

*In re Albrecht*, No. 07-3419, slip op. at 3 (6th Cir. May 2, 2007).

appropriately deferred to the Ohio Supreme Court's interpretation of Ohio law in finding that the Albrechts did not have a property interest in the son's body parts the coroner retained for investigative purposes.

Furthermore, the argument that *Albrecht II* impermissibly "overrules" and conflicts with *Brotherton* is flawed. *Brotherton* is distinguishable from the facts in this case, and this Court has already ruled to that extent in *Waeschle*. As noted, the facts in *Waeschle* are nearly identical to the facts in this case. On this issue, this Court stated that

> *Brotherton* and *Whaley*, however, are distinguishable from the present case. The key difference is that the brain of Waeschle's mother was removed and retained for study by the Medical Examiner in furtherance of a lawful criminal investigation. By contrast, the removal of corneas in *Brotherton* and *Whaley* served no investigative function whatsoever. The distinction is important because Waeschle might have no right under Michigan law to possess, control, or dispose of her mother's brain once it is removed for legitimate forensic study.

*Waeschle v. Dragovic*, 576 F.3d at 546-47. The *Waeschle* court stated that the plaintiff "might have no right" to her mother's brain because the law in Michigan has not been clearly defined on this issue. The Supreme Court of Ohio, however, has clearly defined the law on this issue in Ohio. Furthermore, this Court and the Supreme Court of Ohio agree that *Brotherton* applies only in the narrow circumstance of unauthorized removal of body parts for donations, and should not be expanded to include claims by next of kin for bodily tissues retained by a government official for legitimate criminal investigations. *Id.*; *Albrecht v. Treon*, 118 Ohio St.3d 348, 353 (2008) (*Albrecht II*).

The Albrechts further argue that their position is supported by the district court's decision in *Hainey v. Parrott*, No. 1:02-CV-733, 2005 WL 2397704 (S.D. Ohio Sept. 28, 2005). *Hainey* was a class action lawsuit with facts nearly identical to those at bar. The district court in *Hainey* found that the

> differences in facts likely to [sic] do not take [that] case outside the broad holding in *Brotherton* that there is a substantial and protectable constitutional interest in the dead body of a relative or loved one.

. . . .

Accordingly, the Court concludes that Plaintiffs do have a cognizable constitutional property interest in their decedent's body parts which the coroner's office violated when it disposed of their decedents' brains without prior notice.

. . . .

. . . *Brotherton* very broadly and very clearly held that family members have a property interest in their decedent's body parts which is protected by the due process clause of the Fourteenth Amendment.

*Hainey v. Parrott*, No. 1:02-CV-733, 2005 WL 2397704 at \*6-8 (S.D. Ohio Sept. 28, 2005). *Hainey* was decided prior to the Ohio Supreme Court's ruling on the certified question in this case. Without the benefit of a ruling from the Ohio Supreme Court on this issue, the district court in *Hainey* utilized the precedent available and made a prediction on Ohio law as defined at that time. *See Combs v. International Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (Federal courts must make the "best prediction, even in the absence of direct state precedent, of what the [state supreme court] would do if it were confronted with [the] question."). The district court in *Hainey* did not, and could not, define Ohio property law. The Ohio Supreme Court addressed the *Hainey* case in its opinion on the certified question, stating, "*Hainey's* expansion of *Brotherton* is unsupported by Ohio law." *Albrecht II*, 118 Ohio St.3d 348, 355 (2008). Furthermore, this Court rejected an expansion of *Brotherton* in *Waeschle*. *Waeschle v. Dragovic*, 576 F.3d at 546-47 ("*Brotherton* [is] . . . distinguishable from the present case . . . the removal of corneas in *Brotherton* and *Whaley* served no investigative function whatsoever").

### B. Purported Retroactive Application of *Albrecht II*

Finally, the Albrechts argue that because, in their view, *Brotherton* is the controlling law of this case, their rights to their son's brain under *Brotherton* vested prior to the Ohio Supreme Court's decision in *Albrecht II* and to apply *Albrecht II* to this case would be to apply it retroactively. This argument is a red herring. As explained above, this Court does not define Ohio property law. *Brotherton* did not create a property

interest in the next of kin's deceased relative's corneas, but, instead, interpreted that right as it already existed pursuant to Ohio's Uniform Anatomical Gift Act. *Brotherton* is distinguishable from this case and does not control the outcome, therefore, *Albrecht II* did not impact the law as set forth in *Brotherton*. Thus, the question of whether *Albrecht II* should be applied retrospectively or prospectively is inapposite here, because *Albrecht II* did not change Ohio law.[4] As the district court stated,

> *Albrecht* [*II*] did not contradict *Brotherton* or create new law. Rather, the Supreme Court of Ohio illuminated the fact that both before and after *Brotherton*, Ohio law did not grant the entitlement that Plaintiffs claim. Thus, the Court need not undertake an analysis of whether the decision from the Ohio court is entitled to retroactive effect.

Federal law is clear that the states define property rights in their respective jurisdictions. *See Craft v. U.S. Through C.I.R.*, 140 F.3d 638, 645 (6th Cir. 1998) (Ryan, J., concurring) ("state property law determines which rights, in the bundle of rights we call 'property,' a person may exercise."). The Ohio Supreme Court explicitly delineated the lack of property rights in this case in *Albrecht II*. That Court held that next of kin have no right to autopsy specimens removed and retained by the coroner, in furtherance of a criminal investigation. Although there is no dispute as to the facts as the Albrechts present them, they had no property interest in their son's brain, thus, they cannot support the first element of a due process clause claim. Their claim fails as a matter of law. "[I]f state actors . . . do not infringe on the life, liberty, or property of the plaintiffs, there can be no due process violation." *Whaley v. County of Tuscola*, 58 F.3d 1111, 1113 (6th Cir. 1995). Here, the Albrechts had no property rights on which the state could infringe. As a result, the district court properly granted judgment on the pleadings in favor of the defendants.

---

[4]Both briefs also mention R.C. § 313.123, which states that "retained tissues, organs, blood, other bodily fluids, gases, or any other specimens from an autopsy are medical waste and shall be disposed of in accordance with applicable federal and state laws." R.C. § 313.123. This statute was enacted after the incidents which form the basis for this lawsuit, and, thus, is not controlling on the outcome in this case. *Patel v. Gonzales*, 432 F.3d 685, 690 (6th Cir. 2005) ("courts ordinarily do not apply statutes retroactively unless a statute evidences congressional intent to apply retroactively . . . where a statute is silent as to the scope of its application, the statute should not be applied retroactively") (citations omitted).

**IV.     Conclusion**

For the foregoing reasons, the district court's grant of judgment on the pleadings in favor of Defendants is **AFFIRMED**.