CONCURRING IN PART AND DISSENTING IN PART
COLE, Chief Judge,
concurring in part and dissenting in part.
I concur5 in the majority’s conclusion that the economic-loss doctrine bars the City’s qualified public nuisance claim. However, I respectfully dissent from the majority’s resolution of the absolute public nuisance claim. ' -
I.
• The issue before us is whether the district court erroneously dismissed the City’s third amended complaint for failure tb state a claim upon which relief can- be granted under Federal Rule of Civil Procedure 12(b)(6). We review such dismissal de novo. Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006). To survive dismissal, “a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010) (“Courts must construe the complaint in the light most favorable to plaintiff.”) (internal quotation marks omitted). A claim is facially plausible when the facts allow the court to reasonably infer that the defendant is liable for the alleged wrongdoing. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. While “detailed factual allegations” are unnecessary, “facts that are ‘merely consistent with’ & defendant’s liability” are insufficient. Id. (quoting Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955). So toó are “[tjhreadbare recitals” of the elements of the claim, supported by “conclusory statements” alone. Id.
As the majority acknowledges, an absolute public nuisance is 1) the intentional creation of a public nuisance, which is an unreasonable interference with a right common to the general public or 2) an abnormally dangerous condition bound to injure property, Maj. Op. 476-78 (citing rights to public safety and health as examples of rights common to the general pubr *482 lie). The City’s complaint alleges that Wells Fargo has created an absolute public nuisance by deliberately leaving its many foreclosed properties vacant, unsound, or decrepit, which has led to numerous safety hazards, crime, and the diversion of scarce public resources. (Third Am. Compl., R. 112, PagelD 8202, 8206, 8208, 8210-12, 8218-20.) These allegations meet both definitions of an absolute public nuisance.
The parties agree that to plead an absolute public nuisance claim adequately, the City’s complaint must also allege facts that, if established, would show that Wells Fargo’s management of its foreclosed properties proximately caused the City’s asserted injuries. “Although not the sole element, the requirement of a direct injury is a ‘central element’ of proximate cause.” City of Cleveland v. Ameriquest Mortg. Sec., Inc., 615 F.3d 496, 502 (6th Cir. 2010) (quoting Perry v. Am. Tobacco Co., 324 F.3d 845, 848 (6th Cir. 2003)).
The Ohio Supreme Court has adopted the U.S. Supreme Court’s method for determining whether alleged misconduct directly caused an asserted injury. City of Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St.3d 416, 768 N.E.2d 1136, 1148-49 (2002) (applying the factors detailed in Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 269-70, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)). Under this approach, courts consider 1) whether there are intervening factors between the stated wrongdoing and injury, 2) the difficulty of determining the extent to which any damages stemmed from the wrongdoing as opposed to entirely other factors, 3) whether the court would have to apportion the damages among different plaintiffs to avoid multiple full recoveries, and 4) the availability of directly injured parties better positioned to sue. See Holmes, 503 U.S. at 269-71, 273-74, 112 S.Ct. 1311. Courts need not decide that every factor applies to conclude that the connection between a defendant’s alleged misconduct and plaintiffs asserted injury is too remote for recovery. See, e.g., Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458-61, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006) (holding that plaintiffs claim failed to “satisfy the requirement of proximate causation” “[njotwithstanding the lack of any appreciable risk of duplica-tive recoveries”).
We conducted the directness inquiry adopted by the Ohio Supreme Court in Ameriquest. There, the city of Cleveland alleged that financial entities created a qualified public nuisance by financing sub-prime loans that caused a foreclosure crisis. Ameriquest, 615 F.3d at 498-99. Cleveland alleged essentially the same injuries as the City, including numerous safety hazards generating maintenance and demolition costs. Id. at 499. We affirmed the dismissal of the qualified public nuisance claim on proximate cause grounds, observing that “[hjomeowners ... were responsible for maintaining their properties” and the availability of more immediate victims, including those who had suffered foreclosure. Id. at 504-07.
At least some of the City’s allegations in its third amended complaint significantly differ from Cleveland’s and adequately plead proximate cause. Here, unlike in Ameriquest, the defendant owns the dilapidated foreclosed properties. Thus, there are no intervening factors between its alleged failure to maintain the properties and the costs of repeated municipal inspections for safety hazards, clean-up and utilities expenses incurred to prevent further hazards, and the costs of barricading or demolishing irreparable homes. (See Third Am. Compl., R. 112, PagelD 8211-12, 8214, 8216, 8218-20.) Further, a lower court could easily trace these damages to Wells Fargo and award them to the City without worrying about apportionment among dif *483 ferent plaintiffs. Finally, the City is not only best positioned to pursue these damages; it is the only entity that could. For these reasons, the City adequately pleads proximate cause as to the above injuries under its absolute public nuisance claim.
The majority concludes that the City has altogether dropped its absolute public nuisance claim. Maj. Op. 478. The majority reasons that the City’s second amended complaint contains a “common law public nuisance” claim and a “common law absolute public nuisance” claim whereas its third amended complaint contains only the former. Id. at 476, 478. (Compare Second Am. Compl., R. 29, PageID 5333-36, with Third Am. Compl., R. 112, PageID 8218-20.) This analysis suffers two infirmities.
First, claim six of the third amended complaint sets forth a claim for a “common law public nuisance,” which encompasses both an absolute and qualified public nuisance claim, not a common law qualified public nuisance. (Third Am. Compl., R. 112, PageID 8218.) More importantly, the third amended complaint meets both definitions of an absolute public nuisance and the proximate cause requirement. (See id. at 8202, 8208, 8210-12, 8216, 8218-20 (offering Wells Fargo’s intentional “fail[ure] to take responsibility for the ... upkeep of [its] properties,” such as “failing] to properly secure” them and rendering them “uninhabitable,” which requires the City to continually inspect, maintain, and demolish the properties, as deliberate interference with public safety and an abnormally dangerous condition harming property).)
Second, Wells Fargo never disputed (until oral argument) that the City’s third amended complaint incorporates the former complaint. See, e.g., Def.’s Br. 3 n.1 (“[G]iven the case’s procedural posture, we relate disputed facts as the City has alleged them in its second and third amended complaints.”). (See Third Am. Compl., R. 112, PageID 8220 (“The City restates its claims for damages ... for Defendants’ •common law public nuisance properties.”) (emphasis added).)
The majority affirms the dismissal of the City’s absolute public nuisance claim on a separate, equally flawed basis: the City has not identified the specific properties causing it harm. Maj. Op. 479. This ignores the City’s exhibits D, F, and H, which reference properties “so deteriorated and dilapidated that they were declared public emergencies”; the over 3,000 pages of code enforcement records citing properties threatening public health and safety; and Wells Fargo’s admission that the City’s allegations continue to apply to nineteen specific properties. (See Third Am. Compl., R. 112, PageID 8200, 8207, 8210-11, 8216; see, e.g., Code Enforcement, R. 14-3, PageID 3860 (finding 6611 Vine St. with an “electrical service cable ... hanging loosely from the building,” which “poses a serious threat to the life [sic] safety of anyone around”); Code Enforcement, R. 15-1, PageID 4037 (noting 3907 W. Liberty St. “has a hazardous failing foundation,” “deteriorated materials,” and “broken windows”); Code Enforcement, R. 15-3, PageID 4328 (finding 2768 Queen City “poses a serious threat to anyone who may be in or around it” and “is likely to ... collapse”); Code Enforcement, R. 16-1, PageID 4541 (noting 1733 Westwood Avenue “has been vacant for at least two years,” is “a vandalized dilapidated structure,” and thus “indecent, unsafe and insanitary [sic] for human habitation”).)
The City’s third amended complaint also recounts the frequency with which banks acquire and dispose of properties, and the lag between such acquisitions and dispositions and recording with the Hamilton County Auditor. (See id. at 8207-08.)
*484 Additionally, and of even more importance, the notion that proper., pleading— even notice pleading—requires the City to identify specific properties to survive a Rule 12(b)(6) motion has no basis in law. Contra Maj. Op. 478-80; cf. Ameriquest, 615 F.3d at 506-07 (affirming dismissal of complaint under federal pleading standards for failure to meet proximate cause requirement rather than the omission of specific properties); City of Cleveland v. J.P. Morgan Chase Bank, N.A., No. 98656, 2013 WL 1183332, at *3-6, *8 (Ohio Ct. App. Mar. 21, 2013) (affirming dismissal of similar complaint under notice pleading standards for failure to meet proximate cause requirement and because the economic-loss doctrine barred damages rather than the omission of specific properties). At oral argument, Wells Fargo conceded that no court has required such specificity in a complaint. Wells Fargo itself never raised the City’s purported failure to delineate properties in its complaint.
The City’s allegations that Wells Fargo deliberately leaves its many foreclosed properties vacant, unsound, and decrepit, which forces the City continuously to inspect, tend, barricade and raze them, are worlds apart from the “[tjhreadbare recitals” and “conclusory statements” insufficient to survive a motion to dismiss.. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937; see Courtright v. City of Battle Creek, 839 F.3d 513, 520 (6th Cir. 2016) (construing allegation that plaintiff “suffered, injuries” because, of “[defendants’ unlawful, actions” as a threadbare recital of an element of an excessive force claim). (Third Am. Compl., R. 112, PageID 8202, 8206, 8208, 8210-12, 8214, 8216, 8218-20.) Questions about which properties have caused which damages (if any) are more suited for discovery. As. such, the City’s third amended complaint states a claim for relief that is clearly plausible on its face.
II.
The final question is whether the economic-loss doctrine applies to absolute public nuisance claims. The Supreme Court of Ohio has not addressed this question. At least two Ohio courts of appeals, however, have recognized that the rule excludes all intentional torts. Ineos USA L.L.C. v. Furmanite Am., Inc., No. 1-14-06, 2014 WL 5803042, at *6 (Ohio Ct. App. Nov. 10, 2014); Eysoldt v. ProScan Imaging, 194 Ohio App.3d 630, 957 N.E.2d 780, 785 (2011); see Angerman v. Burick, No. 02CA0028, 2003 WL 1524505, at *2 (Ohio Ct. App. Mar. 26, 2003) (identifying absolute nuisance as an intentional tort).
In arguing that Ohio courts of appeals have held that “the economic-loss doctrine applies to nuisance claims,” Wells Fargo conflates absolute and qualified public nuisances. Def.’s Br. 14-15 (citing RWP, Inc. v. Fabrizi Trucking & Paving Co., Inc., No. 87382, 2006 WL 2777159, at *4 (Ohio Ct. App. Sept. 28, 2006) and J.P. Morgan, 2013 WL 1183332, at *8, both of which involved qualified public nuisance claims). RWP suggests, to the'contrary, that the economic-loss doctrine excludes absolute public nuisance claims. 2006 WL 2777159, at *4 (denying plaintiffs could evade the doctrine by alleging an absolute rather than qualified public nuisance, not because both claims are subject to the doctrine, but because plaintiffs had not sustained the injury needed for an absolute public nuisance claim). I agree that, in Ohio, the doctrine does not apply to absolute public nuisance claims. Accordingly, the City’s third amended complaint sufficiently pleads a claim for absolute public nuisance.
For these reasons, I respectfully concur in part and dissent in part. '